**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

| | |
|---|---|
| ROBERT D. THORNE; BARBARA J. DENNYSSCHEN; DAVE SHEER GUNS; DIPLOPOINT; SOUTHERN ARMS; PRETORIA ARMS PTY LTD; G AND D GROUP, *Plaintiffs-Appellants*, | No.19-17606 D.C. No. 2:19-cv-01982-JCM-EJY |
| v. UNITED STATES DEPARTMENT OF STATE; MICHAEL POMPEO; DIRECTORATE OF DEFENSE TRADE CONTROLS; MIKE MILLER, *Defendants-Appellees*. | OPINION |

Appeal from the United States District Court
for the District of Nevada
James C. Mahan, District Judge, Presiding

Argued and Submitted September 1, 2020
Pasadena, California

Filed October 26, 2020

Before: Eugene E. Siler,[*] Marsha S. Berzon, and
Kenneth K. Lee, Circuit Judges.

Opinion by Judge Siler

---

[*] The Honorable Eugene E. Siler, United States Circuit Judge for the U.S. Court of Appeals for the Sixth Circuit, sitting by designation.

## SUMMARY[**]

### Arms Export Control Act

The panel affirmed the district court's order denying the motion of plaintiff exporters and resellers of United States armaments for a preliminary injunction seeking to force the federal government to abide by procedural protections before debarring plaintiffs under 22 C.F.R. § 127.7 from engaging in their business.

The Arms Export Control Act (AECA) authorizes the President to "control the import and the export of defense articles and defense services." 22 U.S.C. § 2778(a)(1). Pursuant to that authority, the Department of State promulgated the International Traffic in Arms Regulations (ITAR). One of those regulations, 22 C.F.R. § 127.7, allows for the "debarment" of an individual or entity who wishes to act under ITAR and AECA. Plaintiffs claimed that they were de facto debarred from engaging in their business.

To establish a de facto debarment under § 127.7, plaintiffs need to show that the Directorate of Defense Trade Councils (DDTC) has completely prohibited them from legally engaging in all ITAR and AECA activities. The panel held that plaintiffs did not meet their burden. The panel further held that plaintiffs presented facts and evidence that established, at best, the denial of some license applications to export arms, not a complete prohibition to act under ITAR and AECA. The panel also held that plaintiffs did not sufficiently establish that the DDTC improperly

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

imposed a presumption of denial on their license applications. The panel concluded that the district court did not abuse its discretion in denying plaintiffs' motion for a preliminary injunction.

## COUNSEL

Matthew A. Goldstein (argued) and Robert A. Bernheim, Farhang & Medcoff PLLC, Tucson, Arizona; Jordan T. Smith, Pisanelli Bice PLLC, Las Vegas, Nevada; for Plaintiffs-Appellants.

Christopher A. Bates (argued), Sharon Swingle, and Matthew J. Glover, Attorneys; Joseph H. Hunt, Assistant Attorney General; Nicholas A. Trutanich, United States Attorney; United States Department of Justice, Civil Division, Washington, D.C.; for Defendants-Appellees.

## OPINION

SILER, Circuit Judge:

In passing the Arms Export Control Act (AECA), Congress authorized the President to "control the import and the export of defense articles and defense services." 22 U.S.C. § 2778(a)(1). The President delegated such authority to the Secretary of State and State Department, who promulgated the International Traffic in Arms Regulations (ITAR). Exec. Order No. 13,637 § 1(n), 78 Fed. Reg. 16,129, 16,130 (Mar. 8, 2013). One of these regulations, 22 C.F.R. § 127.7, allows for the "debarment" of an individual or entity who wishes to act under ITAR and AECA. "Debarment" constitutes a "prohibit[ion on] . . .

participating directly or indirectly in any [ITAR and AECA] activities . . . ."  22 C.F.R. § 127.7(a)–(b).

Plaintiffs, exporters and resellers of United States armaments, claim they have been "de facto debarred" under 22 C.F.R. § 127.7 from engaging in their business.  In other words, plaintiffs claim that they have been completely prohibited from engaging in all ITAR and AECA activities without being afforded the requisite procedural protections. Plaintiffs brought suit and sought a preliminary injunction to force the government to abide by those procedural protections before debarring them.  The district court denied plaintiffs' request for a preliminary injunction, and we affirm that denial, as plaintiffs have insufficiently pleaded facts and submitted evidence to support their assertion that they have been de facto debarred.

## I.  Background

Plaintiff Robert D. Thorne (Thorne) is in the business of exporting firearms, ammunition, and security equipment from the United States to the other plaintiffs in this case, i.e., the Dave Sheer entities and their beneficial owners, who are based in South Africa and sell those armaments.  To lawfully export such goods under ITAR and AECA, Thorne is required to obtain a license from the Directorate of Defense Trade Controls (DDTC).  *See generally* 22 C.F.R. § 123.1; 22 U.S.C. § 2778.  Thorne's license applications for export to the Dave Sheer entities were regularly approved.

In 2018, the DDTC denied Thorne's 14 then-pending license applications, two of them for "administrative deficiencies" and 12 of them because "the foreign consignee and end-user on each of these license applications," i.e., one of the Dave Sheer entities, "was an unreliable recipient of U.S. origin defense articles."  The DDTC also told Thorne

that "[p]ursuant to 22 CFR 126.7 . . . U.S. persons are accorded an opportunity to present additional information requesting reconsideration of an adverse decision; however we have determined that new permits would not overcome the presumption of denial for these transactions." The DDTC then, through provisos, instructed some third parties to refrain from selling arms to the Dave Sheer entities, and also "flagged" some of the Dave Sheer entities in its database.

Plaintiffs brought the instant action, alleging four claims and requesting a preliminary injunction. Plaintiffs' claims and preliminary injunction request rest on two presuppositions: (1) that the DDTC has de facto debarred plaintiffs, under 22 C.F.R. § 127.7, from engaging in their business; and (2) that the DDTC has improperly instituted a presumption of denial, under 22 C.F.R. § 127.11, on Thorne's license applications listing the Dave Sheer entities and owners as "foreign consignee[s] and end-user[s.]" Because plaintiffs have not sufficiently pleaded or shown that the DDTC has done either of these things, they have not shown that the district court abused its discretion in finding that they did not meet the necessary requisites to obtain a preliminary injunction. *See California v. Azar*, 911 F.3d 558, 568, 575 (9th Cir. 2018); *Arc of Cal. v. Douglas*, 757 F.3d 975, 983–84 (9th Cir. 2014); *Johnson v. Couturier*, 572 F.3d 1067, 1083 (9th Cir. 2009).

## II. Discussion

To establish a de facto debarment under § 127.7, plaintiffs must show that they have been "prohibit[ed] . . . from participating directly or indirectly in any [ITAR and AECA] activities that are subject to this subchapter." 22 C.F.R. § 127.7(a)–(b). Although it is possible to read

"any" in § 127.7 to mean "less than all," the better reading of "any" is to read it synonymously with "total." If the regulation's drafters truly meant for "any" to mean "less than all," the clearer way to indicate such a meaning would be to state, "prohibit[ed] . . . from participating directly or indirectly in any [ITAR and AECA] *activity* that *is* subject to this subchapter." (emphasis added). Such a reading is also more in line with the general concept of a debarment in other contexts. *Cf., e.g.*, 22 C.F.R. § 513.200; 48 C.F.R. § 9.405; 29 C.F.R. § 503.24; 2 C.F.R. § 417.625. So, to establish a de facto debarment under § 127.7, plaintiffs need to show that the DDTC has completely prohibited them from legally engaging in all ITAR and AECA activities.

Plaintiffs have not met their burden in that regard. The facts and evidence Thorne points to establish, at best, the denial of some license applications to export arms to the Dave Sheer entities, not a complete prohibition to act under ITAR and AECA. The denial of a license pertaining to a specific transaction only is not tantamount to a debarment. *See U.S. Ordnance, Inc. v. U.S. Dep't of State*, 432 F. Supp. 2d 94, 99 (D.D.C. 2006) ("Debarment . . . would permanently deprive plaintiff of any chance to obtain a license under the AECA. Whereas, a decision to deny an export license is not an enforcement action, but rather is an exercise of the broad discretion[] granted to the Department. Thus, a denial of a license is only a preliminary action . . . ."), *vacated as moot by U.S. Ordnance, Inc. v. Dep't of State*, 231 F. App'x 2, 2007 WL 141656, at *1 (D.C. Cir. 2007).[1]  A decision to deny an export license is not an

---

[1] *Ordnance* is the only case to have addressed debarment under § 127.7 and interpreted a previous version of that regulation, which defined debarment as "prohibit[ing] any person from participating directly or indirectly in the export of defense articles." *Ordnance*, 432 F. Supp. 2d at 99; 22 C.F.R. § 127.7(a) (2006).

enforcement action, but rather an exercise of the broad discretion granted to the DDTC. Indeed, as Thorne was merely denied a license, the DDTC suggested to Thorne the reconsideration process offered by § 126.7, not the reinstatement and appeal process of § 127.7, i.e., the only process available for debarred individuals and entities. *See* 22 C.F.R. § 127.7(a), (b), (d). Thorne's claim of a government ruse in that regard is uncompelling when he never formally attempted to avail himself of any of the aforementioned review processes, which would probably have shed greater light on his ITAR and AECA status. *See Nat'l Archives & Recs. Admin. v. Favish*, 541 U.S. 157, 174 (2004) ("[T]here is a presumption of legitimacy accorded to the Government's official conduct. . . . [C]lear evidence is usually required to displace it." (citations omitted)).

As for the Dave Sheer entities and owners, it is true that the DDTC termed them unreliable end users, "flagged" them in its internal database, and sent provisos to some third parties instructing them not to engage in business with those entities. That being said, the harshest result of these actions has been the Thorne license denials and DDTC's instruction to some third parties to refrain from engaging in business with the Dave Sheer entities and owners. The license denials, however, pertained to a singular group of transactions with Thorne only. Additionally, plaintiffs point to nothing in the record challenging the DDTC's assertion that it "did *not* add [the] provisos [plaintiffs complain of] to licenses for . . . end-use in South Africa, where the risk of diversion [of arms to the Dave Sheer entities] was determined to be *low*," not non-existent. The Dave Sheer entities and owners cannot claim a de facto § 127.7 debarment when the DDTC has only prohibited some third parties from engaging in transactions with those plaintiffs. Moreover, as with Thorne, those plaintiffs have never

directly availed themselves of the ITAR and AECA process in a way that establishes pretext or an actual, consequential change in their legal status—they have only ever been listed as "foreign consignees or end-users" on *Thorne's* license applications.

By essentially only informally requesting further clarification regarding Thorne's license denials, plaintiffs have not pleaded sufficient facts or provided sufficient evidence of a nefariously imposed complete prohibition on their legal engagement in ITAR and AECA activities so as to overcome the "presumption of legitimacy" that is "accord[ed to] Government records and official conduct." *U.S. Dep't of State v. Ray*, 502 U.S. 164, 179 (1991). Because plaintiffs never engaged in the ITAR and AECA processes after Thorne's license application denials, seemingly unrefuted is the DDTC's assertion that "none of the Plaintiffs have been deemed ineligible by DDTC or are the subject of . . . a . . . debarment" and that it "will continue to review any license applications submitted where Robert Thorne is the exporter or the [Dave Sheer] entities . . . are the foreign consignees or end-users on a case-by-case basis."

As for the purported institution of a presumption of denial on license applications, plaintiffs have read too much into a DDTC email to Thorne, that email being the basis for that argument. The DDTC has explained that its use of the phrase "presumption of denial" was merely meant to convey that a resubmission of license applications unresponsive to the DDTC's reasons for denial would be pointless. The DDTC has also explained that when it stated in its email that "new permits would not overcome the presumption of denial for these transactions," the permits referred to were the Dave Sheer entities' and owners' South African permits, not ITAR and AECA licenses. In other words, when Thorne emailed

the DDTC and asked if "it [would] do any good to resubmit the permits," the DDTC thought Thorne was referring to permits plaintiffs needed to obtain from the South African government to be able to import United States' arms, not the licenses Thorne needed to export those arms.  Plaintiffs never formally requested reconsideration or reapplied for licenses, so the DDTC's assertion that no presumption of denial was actually applied to the licenses that were denied or that such a presumption would be applied to future license applications is not refuted by clear facts or evidence.

In sum, the entirety of plaintiffs' action, including its request for a preliminary injunction, rests on two presuppositions—that they have been de facto debarred and that the DDTC has improperly imposed a presumption of denial on their license applications.  Because plaintiffs have not sufficiently established that either of these things happened, however, the district court did not abuse its discretion in denying plaintiffs' motion for a preliminary injunction.

**AFFIRMED**.